## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————

|  |  |  |
|---|---|---|
| **TANIKA FONTANEZ, JARMIL THARPE, and KAAMIL JENKINS,** | ) ) ) |  |
| **Plaintiffs,** | ) ) | **Civil Action No.** **09-40203-FDS** |
| **v.** | ) ) |  |
| **CITY OF WORCESTER, GARY J. GEMME, Chief of Police, Worcester, Massachusetts, in his official and individual capacities; DANIELLE PIRES, in her official and individual capacities; SEAN BAXTER, in his official capacity; and KEVIN KRUSAS, in his official and individual capacities,** | ) ) ) ) ) ) ) ) |  |
| **Defendants.** | ) ) ) |  |

———————————————————————

## AMENDED MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil rights case against several police officers and the City of Worcester arising

out of a search of an apartment and three subsequent arrests. The amended complaint asserts

claims under 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, and several state-law tort

theories.

On January 19, 2007, Danielle Pires, a state police officer, drove to the apartment

building of Tanika Fontanez. She then radioed for back-up from other police officers; in her

dispatch, she reported that she had been assaulted. Fontanez, Jarmil Tharpe, and Kaamil Jenkins

were in the apartment building at the time. After officers providing back-up arrived at the

building, Pires and the other officers conducted a warrantless search of the apartment. Fontanez, Tharpe, and Jenkins were arrested and charged with assault and battery on a police officer, and Tharpe and Jenkins were charged with unarmed robbery for an incident that had allegedly occurred earlier in the day. The Commonwealth later dismissed the charges.

Fontanez, Tharpe, and Jenkins have now brought this action against Pires, the other police officers involved, and the City of Worcester, with an amended complaint asserting various constitutional and state-law claims. Defendants have each moved for summary judgment. For the following reasons, defendants' motions will be granted in part and denied in part.

## I.      Background

The facts are stated in the light most favorable to plaintiffs unless otherwise noted.

Tanika Fontanez is a resident of Worcester, Massachusetts. Danielle Pires is an officer with the Massachusetts State Police. At the time of the incident, Pires was assigned to the State Police recruitment office. While on that assignment, she did not investigate street-level crime or make arrests. (Pires Dep. at 23:14-17, 25:14-20).

Fontanez and Pires had been acquainted for some time before the incident giving rise to this case. Among other things, Pires's daughter Desire and Fontanez were romantically involved with the same man, Bernard Johnson. Johnson fathered Fontanez's two children. He was later murdered in Desire's presence on August 30, 2007. (Fontanez Dep. at 25:11-23, 53:2-4). Following Johnson's death, Fontanez and Desire exchanged heated messages on MySpace, and eventually Pires began sending messages directly to Fontanez. (*Id.* at 76:7-78:1).

On January 19, 2007, Pires received a telephone call from her daughter. Desire told her that Jarmil Tharpe, a friend of Fontanez, had approached her car, slapped her, and told her to get

2

out of the car.  When she refused, Tharpe and his brother, Kaamil Jenkins, entered the car through the windows and tried to take the keys out of the ignition.  (Pires Facts ¶¶ 17-18, Ex. C).[1]

Pires drove to the area and saw Tharpe and Fontanez walking on Houghton Street. (Tharpe Dep. at 131:14-132:7; Pires Dep. at 54:8-22, 58:15-17).  Pires got out of her car and approached Tharpe, yelling "You hit my fucking daughter!"  (Fontanez Dep. at 88:10-16). Tharpe and Fontanez did not respond, but walked into the apartment building at 88 Houghton Street where they both lived.[2]  Pires followed them into the building.  (*Id.* at 92:21-93:5).  Pires told Fontanez and Tharpe she would file criminal charges.  She asked Fontanez where she lived in the building.  Fontanez refused to tell her and told Pires to leave the building.  (*Id.* at 168:22-169:14-18).

Pires left the building and placed a hamper inside the door to prevent it from closing and locking.  (*Id.* at 96:9-13).  Around this time, Jenkins approached the building.  Pires asked Jenkins what street they were on.  He did not respond and joined Fontanez and Tharpe in the apartment.[3]  Pires then called the Massachusetts State Police.  (*See* Pires Facts ¶ 28).

Trooper George Driscoll of the Massachusetts State Police arrived approximately 20 to 30 minutes later, followed shortly by Officer Kevin Krusas of the Worcester Police Department. (Pl. Resp. Pires Facts ¶ 105; Krusas Dep. at 7:11-20, 38:2-5, 92:1-3).[4]  Officer Krusas spoke with

---

[1] Kevin Rocheford, an acquaintance of Tharpe and Jenkins, was also present during this incident.  (Tharpe Dep. at 107:10-20, 111:13-113:19).

[2] Fontanez rented the apartment and Tharpe resided there as her roommate.  (Fontanez Dep. at 122:16-123:2, 136:10-15).

[3] Rocheford was with Jenkins and also went into the apartment.  (Pires Facts ¶ 31).

[4] The incident between Pires occurred at approximately 1:30 p.m.  Trooper Driscoll and Officer Krusas arrived around 2:00 or 2:30 p.m.  (*See* Pl. Resp. Pires Facts ¶ 105, Ex. G; Krusas Dep. at 78:6-21).

Pires and she told him that she had been assaulted by people who were in the building. (Krusas Dep. at 9:2-11).

Shortly thereafter, Sergeant Matthew D'Andrea of the Worcester Police arrived and took charge of the scene. (Pires Dep. at 111:1-12; Krusas Dep. at 10:4-11:22).[5] He ordered Officer Krusas to take a position in the back of the building and watch the back door. (Krusas Dep. at 10:4-11:22). At this point, there were about ten police officers at the scene. (Pl. Resp. Pires Facts ¶ 40, Ex. E). Pires followed approximately five officers into the building. (Pires Facts ¶ 42). The police officers kicked in the door to Fontanez's apartment and entered, followed by Pires. (Driscoll Internal Aff. Test., at 8:1-7).[6] Officer Krusas was let in through the back door of the apartment by the other officers. (Pires Facts ¶¶ 44-45, Ex. E).

The officers conducted a search of the apartment. They did not have a search warrant. During the search, Pires went through a photo album; she also removed photographs of Johnson from another album that she found in a cabinet. (Pires Facts ¶ 46; Pl. Resp. Pires Facts ¶ 46, Exs., H, I, J).[7] As the officers were finishing their initial search of the apartment, Trooper Driscoll called for a K-9 unit to conduct a further search. (Pires Dep. at 127:11-12). After the search, Officer Krusas interviewed Desire and her friend about the incident with Tharpe and Jenkins. (Pires Facts ¶ 51). While the interview was taking place, Pires left the scene to look for

_____

[5] Fontanez, Tharpe, Jenkins, and Rocheford saw the police officers arrive at the residence and left the apartment undetected through the back door. (Fontanez Dep. at 102:17, 174:3-21).

[6] The police officers also broke down the door of a neighboring vacant apartment. (Pires Dep at 122:20-24, 123:11-16).

[7] Pires denied removing and taking possession of any photographs. (Pl. Resp. Pires Facts ¶ 46, Ex. I at 126:6-26). However, Lt. Baxter testified that Pires handed him the photographs in front of 88 Houghton Street. (Pl. Resp. Pires Facts ¶ 46, Ex. J at 17:22-23).

4

Fontanez, Tharpe, and Jenkins. (*Id.*; Baxter Facts ¶ 25; Pires Dep. at 164:20-165:3).

Lieutenant Sean Baxter of the Massachusetts State Police arrived at the scene after hearing Trooper Driscoll's call for a K-9 unit and other radio transmissions related to the incident. (Baxter Facts ¶¶ 18-19).[8] When he arrived, Officer Krusas told him that "he was handling everything," that they had cleared the apartment, and that this would be a Worcester Police Department investigation. (*Id.* ¶ 26). Lt. Baxter called Pires and told her to return to the scene. (*Id.* ¶ 29). When she arrived, she told Lt. Baxter what had happened and gave him photographs of Tharpe and Jenkins. (Pires Facts ¶ 62; Pl. Ex. I). After the K-9 unit arrived, Lt. Baxter conducted another search of the apartment. (Baxter Facts ¶¶ 31-32).[9]

After searching the apartment, Lt. Baxter went to the house of the mother of Jenkins and Tharpe. He asked her to identify her sons from the photographs he had obtained from Pires. (*Id.* ¶ 38). He strongly suggested that it would be best for her sons to turn themselves in, and said the police would "turn the city upside down" to find them. (*Id.*). Lt. Baxter then returned to 88 Houghton Street. He saw that the light was on and entered the apartment to investigate. (Pl. Resp. Baxter Facts ¶ 39, Ex. U at 213:22-24).

When Fontanez returned to the apartment, she saw that some of her personal property was damaged or destroyed and that several items in the apartment were missing. (*See* Fontanez Dep. at 117:1-14, 168:7-21). Specifically, she testified that several items were thrown in the toilet and that photographs were ripped in half. (*Id.* at 117:9-16, 168:8-12). She also testified that photo

---

[8] Lt. Baxter spoke with Pires on his cell phone while en route to the apartment. (Baxter Facts ¶ 57).

[9] Officer Krusas testified that he said he did not need to participate in the further search because the Worcester Police had already cleared the scene. (Krusas Dep. at 48:15-18).

albums and an iPod portable media player were missing from the apartment. (*Id.* at 168:15-21).

Fontanez, Tharpe, and Jenkins were later charged with assault and battery on a police officer based on Pires's allegations of the events that occurred at 88 Houghton Street.[10] Jenkins and Tharpe were also charged with unarmed robbery for the incident involving Desire Pires.[11] Fontanez and Tharpe presented themselves to the Worcester Police Department when they learned that the Massachusetts State Police were looking for them. (*Id.* ¶ 28, Ex. 3). The assault and battery on a police officer charged against Tharpe was amended to assault and battery and he pleaded guilty. (Krusas Facts ¶¶ 26, 31). After an investigation, the Commonwealth dismissed all of the remaining charges.

## II.    <u>Procedural Background</u>

The amended complaint alleges (1) claims against the officers and the City of Worcester under 42 U.S.C. § 1983, asserting violations of (a) the Fourth and Fourteenth Amendment protections against unreasonable search and seizure without probable cause and excessive force and (b) the Fourteenth Amendment protections against deprivation of property and liberty without due process of law; (2) claims against the officers and the Worcester chief of police under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I; and (3) claims against Pires and other officers for assault, conversion, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

On October 15, 2010, the Court dismissed certain claims brought against defendant Pires

---

[10] Jenkins was charged with assault and battery on a police officer apparently due in part to confusion between his and Tharpe's first names. (*See* Krusas Facts ¶ 22). Officer Krusas discovered the mistake on January 22, 2007, and filed a supplemental report indicating the discrepancy. (*Id.* ¶ 23, Ex. 2).

[11] The armed robbery charge against Jenkins was later amended to larceny from a person. (Krusas Facts ¶ 27).

for failure to state a claim upon which relief could be granted. Following the summary judgment motion hearing, the Court dismissed all claims brought against defendant Baxter in his official capacity, all claims against defendant Deborah Simon, the claims against the Doe defendants, the claims of plaintiffs Fontanez and Tharpe against defendant Krusas for malicious prosecution and abuse of process, the federal and state constitutional claims against defendant Gary Gemme, the federal constitutional claims against the City of Worcester, and the assault and intentional infliction of emotional distress claims.

The remaining claims are as follows: Counts 5 and 6, alleging conversion on behalf of plaintiffs Fontanez and Tharpe against defendant Pires; Counts 9 and 10, alleging malicious prosecution on behalf of plaintiffs Fontanez and Tharpe against defendants Pires and Baxter; Count 11, alleging malicious prosecution on behalf of plaintiff Jenkins against defendants Pires, Baxter, and Krusas; Counts 12 and 13, alleging abuse of process on behalf of plaintiffs Fontanez and Tharpe against defendants Pires and Baxter; Count 14, alleging abuse of process on behalf of plaintiff Jenkins against defendants Pires, Baxter, and Krusas; Counts 18, 19, and 20, alleging an action arising under § 1983 against defendants Pires, Baxter, and Krusas; Counts 21, 22, and 23, alleging an action arising under Mass. Gen. Laws ch. 12, § 11I against defendants Pires, Baxter, and Krusas; and Count 31, alleging trespass on behalf of plaintiffs Fontanez and Tharpe against defendants Pires, Baxter, and Krusas. Defendants have moved for summary judgment as to all remaining claims.

## III.    <u>Standard of Review</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## IV. Analysis

### A. Section 1983 (Counts 18, 19, 20)

Section 1983 is a vehicle for vindicating substantive rights conferred by the Constitution or laws of the United States that have been violated by persons acting under color of state law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Albright v. Oliver*, 510 U.S. 266, 315 (1994). Here, it is not disputed that defendants are state actors being sued for actions taken pursuant to their official duties; the issue is solely whether their actions deprived plaintiffs of their constitutional rights.

Plaintiffs' stated basis for the constitutional claims are (1) an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, and (2) a violation of their

substantive due process rights under the Fourteenth Amendment.[12]  Defendants both deny that the officers' conduct rose to the level of a constitutional deprivation and contend that to the extent that it did, they are entitled to qualified immunity.

### 1.     Unreasonable Search and Seizure

It is well-established that a warrantless entry into a residence is presumptively unconstitutional unless an exception applies.  *Groh v. Ramirez*, 540 U.S. 551, 558-59 (2004); *United States v. Romain*, 393 F.3d 63, 68 (1st Cir. 2004).  Here, it is undisputed that neither the Worcester Police nor the Massachusetts State Police had a warrant when they searched plaintiffs' apartment.  Instead, the officers rely on the "exigent circumstances" exception to the warrant requirement

The "exigent circumstances" exception encompasses narrow "situations in which some compelling reason for immediate action excuses law enforcement officers from pausing to obtain a warrant."  *United States v. Martins*, 413 F.3d 139, 146 (1st Cir. 2005).  Whether an exigency existed at the time of a warrantless entry is assessed "in light of the totality of the circumstances." *United States v. Wihbey*, 75 F.3d 761 (1st Cir. 1996).  The inquiry is "limited to the objective facts reasonably known to, or discoverable by, the officers at the time of the search."  *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995).  If an exigency is found, police officers must employ "the least restrictive intrusion" to deal with the exigency, otherwise "the whole constitutional requirement of obtaining a warrant would be defeated."  *United States v. Veillette*,

---

[12] The amended complaint also alleges in passing that defendants are liable for use of excessive force. However, plaintiffs have not since raised this issue and do not appear to be pursuing an excessive force theory. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"  *Redondo-Borges v. United States HUD*, 421 F.3d 1, 6 (1st Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  "'[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'"  *Id.* (quoting *Zannino*, 895 F.2d at 17).

778 F.2d 899, 903 n.2 (1st Cir. 1985).

Defendants contend that they entered the apartment in hot pursuit of a fleeing suspect. "In order to fall within the hot pursuit exception, the officers must be in 'immediate' and 'continuous' pursuit of the suspect fleeing the scene of the crime." *United States v. Acosta-Soto*, 2009 U.S. Dist. LEXIS 97256, at *11 (D. Mass. Oct. 21, 2009) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) and *United States v. Salvador*, 740 F.2d 752, 758 n.5 (9th Cir. 1984)); *see also United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003).

Here, Pires and Officer Krusas entered and searched the apartment approximately one half-hour after Pires had followed Fontanez and Tharpe into the apartment building. There were at least ten officers present and they took control of the area, stationing officers at the exits to the building. Given these circumstances, a reasonable jury could conclude that there was not a "compelling necessity for immediate action," such that the officers could not wait to obtain a warrant. *United States v. Wilson*, 36 F.3d 205, 209-210 (1st Cir. 1994); *see also O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir.1994) (explaining that the police "took control of the area, gathered information, and developed a response plan," thus, "no reasonable fact finder would find that they were in hot pursuit").

Lt. Baxter was initially told that the search was initiated in hot pursuit of a suspect. However, when he arrived at the scene, Officer Krusas told him that the apartment had been cleared and the suspects had escaped—that is, the purported reason for the exigency had dissipated. Despite this, Lt. Baxter waited for a K-9 unit and conducted a further search of the apartment. At the very least a reasonable jury could conclude that Lt. Baxter did not use "the least restrictive intrusion" available to deal with the purported exigency. *Veillette*, 778 F.2d at

903 n.2.[13]

Defendants' motions for summary judgment as to the § 1983 claims arising from the Fourth Amendment will therefore be denied.

## 2. Substantive Due Process

Plaintiffs also contend that defendants violated their Fourteenth Amendment substantive due process rights under a "shock the conscience" theory. "Substantive due process is a constitutional cause of action that leaves the door 'slightly ajar for federal relief in truly horrendous situations.'" *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (quoting *Nestor Colon-Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992)). In order to establish such a claim, plaintiffs must prove that they were deprived of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocked the conscience. *Id.*; *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006).[14] However, "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." *Pagan*, 448 F.3d at 33 (citing *S. County Sand & Gravel Co. v. Town of S. Kingstown*, 160 F.3d 834, 835 (1st Cir. 1998), *Sacramento v. Lewis*, 523 U.S. 833, 843 (1998), and *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, plaintiffs contend that defendants violated their substantive due process rights by illegally searching the apartment more than once and by seizing their property without a warrant.

---

[13] In any event, plaintiffs adduced evidence that Lt. Baxter entered the apartment a second time later that evening—hours after the circumstances giving rise to the alleged exigency had dissipated.

[14] "There is no scientifically precise formula for determining whether [an official's] action is—or is not—sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment." *Pagan*, 448 F.3d at 32. However, "the official conduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'" *Maldonado v. Fontanes*, 568 F.3d 263, 273 (1st Cir. 2009) (quoting *Chavez v. Martinez*, 538 U.S. 760, 775 (2003)).

This alleged conduct falls squarely within the constitutional provisions protecting plaintiffs' right to be free from unreasonable search and seizure. *Pagan*, 448 F.3d at 33.[15] Plaintiffs' substantive due process claims will therefore be dismissed.

### 3. **Qualified Immunity**

Defendants contend that even if they behaved inappropriately, they are nonetheless protected from liability on the § 1983 claims by the doctrine of qualified immunity.[16] The qualified-immunity doctrine shields public officials from liability for civil rights violations as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir. 1998). The question is not whether some right has been clearly established at a highly abstract level—for example, the right to be free from unreasonable searches and seizures—but "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violated that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Creighton*, 483 U.S. at 640).

The qualified-immunity analysis consists of the following two inquiries: (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right," and (2) "whether the right was 'clearly established' at the time of the defendant's alleged violation."

---

[15] Plaintiffs presented evidence that Pires initiated an illegal search of the apartment simply to harm them. Although such conduct may be sufficiently "shocking" to satisfy the Fourteenth Amendment inquiry, *see Maldonado*, 568 F.3d at 273, the conduct itself is "covered" by the Fourth Amendment. *Pagan*, 448 F.3d at 33.

[16] Whether an official's actions are protected under the doctrine is "an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." *Tatro v. Kervin*, 41 F.3d 9, 15 (1st Cir. 1994).

*Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). In determining whether a right is "clearly established," a court must consider both the clarity of the law at the time of the alleged violation and the specific conduct of the defendant. *Id.* at 269. In essence, the court must determine "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005); *accord Maldonado*, 568 F.3d at 269.

If plaintiffs' version of the facts is true, Pires and Officer Krusas entered the apartment and conducted a search without a warrant after having secured the area, and Lt. Baxter conducted a search of the apartment after having been informed that the apartment had been cleared and another hours later after speaking with the mother of Tharpe and Jenkins. As discussed, this constitutes a violation of their Fourth Amendment rights—rights that were clearly established at the time of the encounter. Moreover, construing the evidence most favorably to plaintiffs, the unconstitutional nature of defendants' conduct would have been understood by an objectively reasonable officer. *See Maldonado*, 568 F.3d at 269-71. Accordingly, defendants' motions for summary judgment based on qualified immunity will be denied.

### B.     The Massachusetts Civil Rights Act (Counts 21, 22, 23)

The Massachusetts Civil Rights Act provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11I.[17] The

---

[17] Under the statute, a threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; intimidation "involves putting in fear for the purposes of compelling or deterring conduct"; and coercion means "the application to another of such force, either physical or moral, as to constrain him

statute thus contemplates a two-part sequence:  liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do.  *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).  The MCRA affords qualified immunity to public officials to the same extent that § 1983 does.  *Rodriques v. Furtado*, 410 Mass. 878, 881, 885 (1991).

The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." *Columbus v. Biggio*, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) (quoting *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 395-96 (1996)); *see also Longval v. Commissioner of Correction et al.*, 404 Mass. 325, 333 (1989) ("[A] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [Massachusetts Civil Rights] Act."); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 93 (1999) (stating that *Longval* "affirmed the requirement under the [MCRA] that proof of 'threats, intimidation, or coercion' be in addition to the interference with the exercise or enjoyment of secured rights").[18]

---

to do against his will something he would not otherwise have done."  *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994).

[18] In *Longval*, a prisoner who was shackled and handcuffed as part of a transfer to a segregation unit brought a claim under the MCRA, claiming a violation of his due process right to a hearing prior to the transfer. Although the Supreme Judicial Court held that resolution of the issue on summary judgment was premature, it noted the following:

[W]e see no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action.

Shackling and handcuffing [the plaintiff] and taking him to Concord was not by itself coercive under the Civil Rights Act, as [the plaintiff] claims.  If the officials had some further purpose in

Here, plaintiffs alleged that the apartment was searched after an unlawful police entry in violation of their rights right to be free from unreasonable searches and seizures. The officers' conduct in conducting the search of course could be understood to be threatening, intimidating, or coercive. However, plaintiffs do not allege that the officers threatened, intimidated, or coerced them in order to cause them to give up some other right (for example, the right to vote). Rather, the search and seizure itself is the alleged constitutional violation. That violation cannot satisfy both the "threats, intimidation or coercion" and "violation" elements of an MCRA claim. *See Gallagher v. Commonwealth of Mass.*, 2002 WL 924243, at *1 (D. Mass. Mar. 11, 2002) (holding that no violation of the MCRA exists where excessive force against a prisoner was not used in furtherance of violating some additional right); *cf. Davis v. Rennie*, 264 F.3d 86, 112 (1st Cir. 2001) (holding that one officer's physical restraint of the plaintiff and another's use of unreasonable force satisfied the "coercion" and "interference with the enjoyment of rights" elements, respectively). Because plaintiffs do not offer evidence that the officers' use of force was intended to coerce plaintiffs into foregoing some other right, summary judgment will be granted for defendants as to Counts 21, 22, and 23.

## C.    Conversion (Counts 5 and 6)

Counts 5 and 6 allege that defendant Pires committed common-law conversion by converting property belonging to plaintiffs Fontanez and Tharpe. Under Massachusetts law, "conversion requires an intentional or wrongful exercise of dominion or control over personal

---

treating [the plaintiff] as they did, threats, intimidation, or coercion might be involved. Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly.

*Longval*, 404 Mass. at 333-34 (internal citations omitted).

property of another by one with no right to immediate possession." *Kelley v. Laforce*, 288 F.3d 1, 11 (1st Cir. 2002) (citing *Third Nat'l Bank of Hampden County v. Continental Ins. Co.*, 388 Mass. 240, 244 (1983)). "An action for conversion 'cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property.'" *Id.* at 12 (quoting *Grande v. PFL Life Ins. Co.*, 2000 Mass. App. Div. 261, 263 (2000)); *accord Spooner v. Manchester*, 133 Mass. 270, 273 (1882).[19] The plaintiff must have had a present legal right to immediate possession of the property. *Marshall Vessels, Inc., v. Wright*, 331 Mass. 487, 489 (1954).

Plaintiffs contend that Pires took photographs and an iPod from the apartment. Although there is evidence that the iPod was stolen, there does not appear to be any admissible evidence that would allow a reasonable fact finder to conclude that Pires was the one who took it. The mere fact that the iPod was missing after the search is not sufficient proof. *See Kelley*, 288 F.3d at 11-12; *cf. Anderson*, 477 U.S. at 256-57 ("[T]he plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." (emphasis added)).[20] There is, however, sufficient evidence from which a reasonable jury could conclude that Pires took the

---

[19] Moreover, "[i]t is no defense to conversion for [a] defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods." *Kelley*, 288 F.3d at 12 (citing *Kelly v. Dubrow*, 2001 Mass. App. Div. 42, 44 (2001)).

[20] Plaintiffs rely on an affidavit submitted by one Santiago Cook in a different proceeding. In that affidavit, Cook states that Douglas Brisco, another police officer, told her that Pires stole an "iPod/mp3 player from the home of civilians that had problems with her daughter." (Cook Aff. at 4). Brisco's statement is hearsay and is not admissible to defeat summary judgment unless plaintiffs can establish that it falls outside the definition of hearsay or fits within an exception to the rule. *See* Fed. R. Civ. P. 56(c)(2). "As the proponent of the evidence, plaintiff[s have] the burden of demonstrating that the statements fits within the confines of Rule 801 and are thus admissible." *DiMare v. RealtyTrac, Inc.*, 714 F. Supp. 2d 199, 206 (D. Mass. 2010) (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1440 (9th Cir. 1990)). Plaintiffs have not met that burden.

photographs. Several witnesses testified that they saw Pires looking through photo albums, and Pires herself testified that she did so. Pires gave some photographs from these albums to Lt. Baxter to aid in identifying plaintiffs, and plaintiffs have testified that photos of Bernard Johnson—Pires's daughter's murdered boyfriend—were missing after the search. Taken together, this is enough to survive summary judgment. Defendants' motion to dismiss the conversion claim as to the photographs will therefore be denied.

### D. Malicious Prosecution (Counts 9, 10, and 11)

Counts 9 and 10 allege malicious prosecution on behalf of plaintiffs Fontanez and Tharpe against defendants Pires and Baxter, and Count 11 alleges malicious prosecution on behalf of plaintiff Jenkins against defendants Pires, Baxter, and Krusas. To establish a claim of malicious prosecution, plaintiffs must show "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991)); *accord Foley v. Polaroid Corp.*, 400 Mass. 82, 100 (1987).

Fontanez was charged with assault and battery on a police officer; Jenkins was charged with assault and battery on a police officer and larceny from a person; and Tharpe was charged with assault and battery and unarmed robbery. Tharpe pleaded guilty to the assault and battery charge and all of the other charges were dismissed. Thus, criminal proceedings were commenced against plaintiffs that eventually terminated in their favor.

A defendant cannot be liable for malicious prosecution, however, if he had probable

cause to initiate the criminal proceeding. The plaintiff has the burden to prove lack of probable cause; it cannot be inferred merely from the fact of acquittal. *See Muniz v. Mehlman*, 327 Mass. 353, 359 (1951). Furthermore, the plaintiff must prove malice by showing that the defendant knew there was no probable cause for the prosecution, and that he acted with an improper motive. *See Foley*, 400 Mass. at 100. "That improper motive may be one of vexation, harassment, annoyance, or attempting to achieve an unlawful end or a lawful end through an unlawful means." *Beecy v. Pucciarelli*, 387 Mass. 589, 594 n.9 (1982).

The claims against Officer Krusas and Lt. Baxter can be readily resolved. When conducting their investigations that ultimately led to bringing charges against plaintiffs, Officer Krusas and Lt. Baxter relied on, among other things, (1) interviews Officer Krusas conducted with Desire and her friend, (2) Pires's representation that Fontanez and Tharpe assaulted her, and (3) Pires's representation that Tharpe and Jenkins assaulted her daughter and tried to steal her daughter's car. Officer Krusas and Lt. Baxter therefore had probable cause to commence criminal proceedings against plaintiffs. *See Brady v. Dill*, 187 F.3d 104, 112-13 (1st Cir. 1999); *Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 301-02 (D. Mass. 2011) ("Probable cause turns upon 'whether the defendant acted reasonably in swearing out a complaint against the plaintiff on the basis of the information and knowledge which he possessed at that time.'" (quoting *Lincoln v. Shea*, 361 Mass. 1, 4 (1972)).

Furthermore, there is no evidence in the record that either Officer Krusas or Lt. Baxter acted with an actual malice. At most, there is evidence that Lt. Baxter pursued the investigation more aggressively because it involved a fellow police officer. Without more, this is insufficient to satisfy the improper motive prong of a malicious prosecution claim. *See Foley*, 400 Mass. at

101 (reversing malicious prosecution judgment where "the evidence did not warrant a finding that the lack of probable cause was so obvious that the defendant more likely than not knew there was no probable cause"); *Beecy*, 387 Mass. at 594 n.9 ("If the defendant, in making the complaint, acted in good faith and with the honest purpose of bringing an offender to justice, the prosecution, even if it can be held to be without probable cause, was not malicious") (quoting *Ripley v. McBarron*, 125 Mass. 272, 274 (1878)).[21] Accordingly, the malicious prosecution claims brought against defendants Krusas and Baxter will be dismissed.

The claims against Pires are not as straightforward. The existence of probable cause (at least as to some of the charges) turned on the accusations made by Pires, and there is a material dispute as to whether she fabricated the information that she provided. A defendant cannot create false information to manufacture probable cause and then rely on the existence of probable cause to avoid liability for malicious prosecution. *See Brady*, 187 F.3d at 113 n.8; *Limone v. United States*, 497 F. Supp. 2d 143, 206-07 (D. Mass. 2007). Moreover, construing the evidence in plaintiffs' favor, a reasonable jury could infer that Pires acted with actual malice towards plaintiffs by using her position with the State Police to inject herself into a personal conflict between her daughter and plaintiffs.

Thus, the claims against Pires for malicious prosecution turn on the issue of whether she

---

[21] Jenkins was charged with assault and battery on a police officer despite not being present when Pires was allegedly assaulted. Officer Krusas requested arrest warrants after being informed that Pires had been assaulted by suspects that were in the building, (Krusas Facts ¶ 2), and after interviewing Desire and her friend who confused Tharpe and Jenkins's last names. (*See id.* ¶ 22). Taken together, Officer Krusas had probable cause to arrest Jenkins. *See Brady*, 187 F.3d at 112-13; *cf. Commonwealth v. Rugaber*, 369 Mass. 765, 768 (1976) ("Factual inaccuracies not going to the integrity of the affidavit do not destroy probable cause for a search."). Moreover, and in any event, after learning of the mistake, Officer Krusas corrected the error and the charges against Jenkins were dropped. Given these circumstances, a reasonable jury could not conclude that Officer Krusas acted with actual malice. *See Beecy*, 387 Mass. at 594-95.

commenced or continued the criminal proceedings against plaintiffs. "The mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings," is insufficient to support an action for malicious prosecution. *Correllas*, 410 Mass. at 318-19. However, "a person need not swear out a criminal complaint in order to be held answerable for malicious prosecution." *Id.* at 318. Someone who, in bad faith, provides information to a police officer that results in that officer submitting a complaint against another may also be liable. *See Limone*, 497 F. Supp. 2d at 206.

There are effectively two types of malicious prosecution claims brought against Pires: (1) claims brought by Fontanez, Tharpe, and Jenkins arising from the charges of assault and battery on a police officer, and (2) claims brought by Tharpe and Jenkins arising from the charges related to the incident involving Pires's daughter.[22] A claim of malicious prosecution can succeed for one or more of the offenses, even if it fails as to the others. *See Muniz*, 327 Mass. at 360. The Court will therefore consider these two types of claims in turn.

First, there is a genuine dispute as to whether Pires fabricated the facts that led to the charges for assault and battery on a police officer. The only information that any officers could have relied upon in initiating and continuing those charges came from Pires. That claim, therefore, clearly survives summary judgment. However, there is not sufficient evidence to support the claim based on the charges related to the incident with her daughter. The undisputed evidence suggests that Officer Krusas, after initially learning of the incident from Pires,

---

[22] Although the assault and battery on a police officer charge against Jenkins was apparently a result of confusing his and Tharpe's identity, plaintiffs have adduced evidence that would allow a reasonable juror to conclude that Pires falsely accused Jenkins of assaulting her. (*See* Krusas Facts ¶ 2; Pl. Resp. Pires Facts ¶¶ 69, 72, Ex. L 13-14).

conducted his own investigation, and that he directly interviewed the alleged victims of the incident. Although there is evidence that Pires prodded or exhorted Officer Krusas to conduct that investigation, that fact, standing alone, is not enough to support a claim for malicious prosecution. *See Correllas*, 410 Mass. at 318-19; *Beecy*, 387 Mass. at 594 n.9 *Limone*, 497 F. Supp. 2d at 206.

Summary judgment will therefore be denied as to the malicious prosecution claims brought against Pires by Fontanez and Tharpe arising from the charges related to assault and battery on a police officer, and will be granted as to the claims of Tharpe and Jenkins arising from the charges related to the incident with Pires's daughter.

### E.     Abuse of Process (Counts 12, 13, and 14)

Counts 12 and 13 allege abuse of process on behalf of plaintiffs Fontanez and Tharpe against defendants Pires and Baxter, and Count 14 alleges abuse of process on behalf of plaintiff Jenkins against defendants Pires, Baxter, and Krusas. The elements of the tort of abuse of process are (1) that "process" was used against plaintiff (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred as a result. *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 (2000).[23] "The essence of this tort is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 26 (1982) (quotation and internal citation omitted). "The 'ulterior purpose must be to gain some collateral advantage' indirectly that is not properly involved in the proceeding, such as the

---

[23] "More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court to bring a party or property within its jurisdiction." *Vittands*, 49 Mass. App. Ct. at 406 n.9 (quotation and internal citation omitted).

surrender of property or payment of money." *Empire Today, LLC v. Nat'l Floors Direct, Inc.*, 788 F. Supp. 2d 7, 24 n.127 (D. Mass. 2011) (quoting *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713-14 (2011)).[24]

As discussed, there is no evidence in the record to suggest that Officer Krusas or Lt. Baxter acted with an "ulterior or illegitimate purpose" in pursuing the criminal prosecution. There is certainly evidence that Pires acted with malice toward plaintiffs (for example, to take revenge for their treatment of her daughter), and that she groundlessly accused Fontanez and Tharpe of assault and battery on a police officer. This, however, is insufficient to support a claim for abuse of process. Although relevant, "[f]iling a groundless claim or having an improper motive of 'vexation, harassment, or annoyance' . . . does not alone suffice to demonstrate ulterior purpose." *Empire Today, LLC*, 788 F. Supp. 2d at 23; *accord Psy-Ed Corp.*, 459 Mass. at 714 & n.35 ("An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly."); *Ladd v. Polidoro*, 424 Mass. 196, 199-200 (1997). Rather, "[t]here must also be proof of an ulterior motive" to gain something collateral to the legitimate purpose of the proceeding. *Ladd*, 424 Mass. at 200; *accord Psy-Ed Corp.*, 459 Mass. at 714 & n. 36. Summary judgment will therefore be granted as to the abuse of process claims.

## F.     Trespass (Count 31)

Count 31 alleges a trespass claim on behalf of plaintiffs Fontanez and Tharpe against defendants Pires, Krusas, and Baxter. To establish a claim of trespass in Massachusetts, "it is

---

[24] Abuse of process "has been compared to extortion, in that the defendant has allegedly tried to exact some advantage by wrongful means." *Psy-Ed Corp.*, 459 Mass. at 714 n.36.

necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant."
*Akar v. Fed. Nat'l. Mortg. Assoc.*, 2011 WL 6288055, at *12 (D. Mass. Dec. 1, 2011) (quoting
*New England Box Co. v. C&R Constr. Co.*, 313 Mass. 696, 707 (1943)); *Stoddard v. Somers*,
2004 WL 2830704, at *4 n.4 (D. Mass. Dec. 7, 2004). "A trespass requires an affirmative
voluntary act upon the part of the wrongdoer." *United Electric Light Co. v. Deliso Constr. Co.*,
315 Mass. 313, 318 (1943).

Here, plaintiffs were in possession of the apartment—Fontanez was on the lease and
Tharpe lived there—and Pires, Officer Krusas, and Lt. Baxter entered it. As discussed above,
there is evidence to create a genuine issue of fact as to whether defendants lawfully entered
plaintiffs' apartment. *See Stoddard*, 2004 WL 2830704, at *4 n.4; *cf. Sanchez v. City of Boston*,
2011 WL 5508929, at *2 (D. Mass. Nov. 10, 2011) ("To implicate the Fourth Amendment, a
search or seizure of property must amount to more than a mere common-law trespass.").
Summary judgment as to the trespass claim will therefore be denied.

## V.    Conclusion

For the foregoing reasons, defendants' motions for summary judgment are GRANTED as
to (1) the entirety of Counts 12, 13, 14, 21, 22, and 23; (2) the claims against defendant Baxter in
Counts 9, and 10; (3) the claims against defendants Baxter and Krusas in Count 11; (4) the
claims against defendant Pires in Counts 9, 10, and 11 arising from the charges related to the
incident with her daughter; and (5) the § 1983 claims based on substantive due process in Counts
18, 19, and 20. Defendants' motions for summary judgment are DENIED as to (1) the entirety of
Counts 5, 6, and 31; (2) the claims against defendant Pires in Counts 9, 10, and 11 arising from
the charges related to assault and battery on a police officer; and (3) the § 1983 claims based on

the Fourth Amendment in Counts 18, 19, and 20.

**So Ordered.**

 /s/ F. Dennis Saylor
F. Dennis Saylor IV

Dated:  July 9, 2012                                       United States District Judge